## VERRETT v. AMERICAN POLICY-HOLDERS' INS. CO.

### Civ. No. 3340.

United States District Court,
W. D. Louisiana, Opelousas Division.

March 19, 1952.

Guidry & Willis and Earl H. Willis, St. Martinville, La., for plaintiffs.

Voorhies & Labbe and Donald Labbe, Lafayette, La., for defendant.

DAWKINS, Chief Judge.

This is an action for damages for personal injuries growing out of an automobile accident. The plaintiffs were passengers in a private automobile driven by the husband of one of them. They were Joseph Verrett, Mrs. Lena Domingues Grand, wife of Raoul Grand, owner of the car, Mrs. Olivia Domingues Begnaud, wife of Ambroise J. Begnaud, the said Ambroise J. Begnaud, and Mrs. Ann Verrett Domingues, wife of Valerie Domingues, driver of the car and daughter of the said Joseph Verrett. Mrs. Begnaud was also a sister of Mrs. Domingues and the sister-in-law of the said Valerie Domingues. They were all citizens of Louisiana. The defendant was American Policyholders' Insurance Company, a corporation created under the laws of Massachusetts, sued directly and alone under the provisions of Act 55 of 1930, as amended, jurisdiction being based upon diversity of citizenship.

The automobile was loaned to the party of five by the said Raoul Grand for the purpose of making a trip from Lafayette to the City of New Orleans. The left side of the front end of the machine struck an iron and concrete separator dividing the highway which ran east and west into channels consisting of two lanes each, the north side for westerly and the south for easterly traffic. When the automobile came to rest, it is undisputed that the left front tire was flat, and it had to be removed to a garage for repairs by a wrecker. The four plaintiffs were injured in varying degrees, as was the fifth occupant and driver, Valerie Domingues. Two days after the accident, all of them were interviewed at a hospital in the City of Lafayette. Domingues gave the representative of an independent investigating agency, acting for defendant insurance company, a statement in which he said that while driving about 45 miles per hour, on his right side of the lane, the left front tire of the automobile became deflated, and this caused it to veer to the left from the right south lane in which he was driving into the separator, in spite of his efforts to steer it away from that obstruction and to keep it on the right side of the eastbound channel. Similar unsworn statements as to what caused the striking of the obstruction were made at the same time by the other occupants of the car. Without dispute, the accident took place in the early morning hours about 5 o'clock, while it was still dark and the headlights were burning. In addition to this, the owner of the automobile, Grand, testified that some one of the party called him on the telephone shortly after the collision, informed him of the accident and said that it had been caused by a flat tire which made the car run into the obstruction.

Plaintiffs attempted to call the driver, Valerie Domingues, on cross-examination, to which defendant objected, and was sustained by the Court, for the reason that Domingues was not a party to the suit and occupied no relationship to the defendant which would permit this under the Federal Rules of Civil Procedure, since the plaintiffs had chosen to ignore him as the real tort feasor and sued the insurer alone, for the patent reason that to have included him as a defendant would have eliminated jurisdiction in this court. After the defendant's objection had been sustained, plaintiffs, subject thereto, called Domingues as their own witness. The substance of his sworn testimony was that he was driving down the middle of the

highway, and that although his lights were burning brightly and there was no fog or anything to interfere with his view, he did not see the obstruction until he had reached a point where, in spite of every effort, he ran into it. This witness further testified that he had been trying ever since to figure out just what happened and had been unable to do so. When taken on cross-examination by counsel for defendant, he was confronted with his own signed statement taken within two days after the accident, in which he had stated the right front tire had gone flat, that he was on his proper side of the road, and in spite of his efforts, he could not keep it from striking the separator. His answers appeared to the Court to be evasive, and he was reminded that he was under oath. He finally admitted that he had made and signed the statement and that the said tire had gone flat and caused him to run into the obstruction. The other four occupants denied that they had stated the tire had gone flat, as appeared in their statements, and affirmatively swore that it had not; that Domingues was driving in the center of the road at 45 to 50 miles per hour and did not attempt to pull away from the obstruction in time to miss it, although there was nothing in the weather conditions or otherwise to have prevented him from seeing it. There were no witnesses on behalf of the defendant to what actually happened in the collision, and the sole facts on that score were entirely in the hands of the occupants of the car.

The Court instructed the jury fully as to the burden of proof, the weighing of the testimony of the plaintiffs, in view of their interest, relationship, etc., reasonableness of their statements, and the clear conflicts between the unsworn statements in the hospital and their testimony on the witness stand.

The policy of insurance contained the following provision: "16. Assistance and Cooperation of the Insured. The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. * * *"

Defendant pled, as a special defense, its violation by Domingues, who occupied the position of insured thereunder; and the Court charged the jury fully as to the effect that if they were convinced that this provision in the policy had been violated by him in a manner to deprive defendant of a full and fair presentation of the case, then the insurer was relieved and the plaintiffs could not recover. The jury found for all four plaintiffs, thereby in effect deciding that issue against defendant.

Thereafter, defendant filed a motion for judgment notwithstanding the verdict on the ground first of insufficient evidence to support it, and second, the failure of Domingues to cooperate in the defense, and in the alternative, for a new trial. The first ground was overruled at the end of the argument, but judgment on the second, and as to whether a new trial should be granted was reserved. These are the matters now to be decided.

The alleged failure to cooperate.

An examination of the law convinces me that my ruling submitting the question of co-operation by the insured Domingues to the jury was correct, since it involved an issue of fact bearing upon a valid defense, if sustained, to all four claims. See Cyclopedia of Automobile Law and Practice, Blashfield, Volume 6, Section 4059.

A case clearly in point was by the Court of Appeals of New York, whose decisions are highly respected throughout the country, and was reported in 252 N.Y. 330, 169 N.E. 403, under the name of Seltzer v. Indemnity Ins. Co. of North America. In that case, one Jacob Wasserman was the insured "against * * * liability for negligence" in a policy of the defendant and was driving when the automobile covered by the policy turned over and injured three other people who "were close personal friends". One had been in the real estate business with him "for some years"; and although that business was carried on "through a corporation, Wasserman and Seltzer", the latter one of the plaintiffs,

"acted toward each other as if they were partners"; a second plaintiff, Ruth Seltzer, was the daughter of said Seltzer, and the third, Rose Gilbert, "was the daughter of another partner of Wasserman's and worked for the * * * Corporation through which the partners * * * did business."

The plaintiffs in the cited case employed the personal attorneys of Wasserman and brought suit against the latter for damages. They recovered judgments for various sums. Wasserman being insolvent, plaintiffs sued his insurer, the indemnity company, as they were permitted to do under the law of New York. The policy contained this provision: "The assured shall at all times render to the company all cooperation and assistance in his power and whenever requested shall aid in securing information as evidence and the attendance of witnesses and in prosecuting appeals."

The Court stated: "If * * * Wasserman failed to comply with this condition of the policy, he could not recover for any liability which he had met by payment, neither could the persons recovering the judgments, in case of his insolvency and nonpayment. They stand in his shoes * * *. Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367 [72 A.L.R. 1443]."

The Indemnity Company defended on the ground not only of Wasserman's failure to co-operate, but charged that he "had gone so far as to wrongfully aid and assist a recovery by the plaintiffs." The lower court, however, took the case from the jury and directed a verdict in favor of the plaintiffs for the amount of the judgments against Wasserman. The Court of Appeals said:

"In this we think he was in error. The evidence should be submitted to the jury to determine whether Jacob Wasserman failed to comply with the above-quoted condition in the policy. (Emphasis by the writer.)

"After the commencement of the actions by his friends and associates, through his own attorneys, he (Wasserman) made an affidavit for the insurance company which was the reason for its defending the claims. The negligence charged against Wasserman was fast driving. In this affidavit he swore that he did not drive faster than 25 miles an hour and that no one in the car complained to him about driving too fast or asked him to drive slower; no remarks were made to him whatever about driving. This was important evidence bearing upon both the question of negligence and of contributory negligence of the plaintiffs. * * *

"As the time of the trial drew near, * * * Wasserman suddenly lost his memory. He could not recollect how fast he was driving and he could not recollect whether the people in the car had warned him or not. * * * The defendant did not call him on the trial of the negligence cases because of this failing memory. Who can tell whether Jacob Wasserman was telling the truth when he made the affidavit or when he said at the time of the trial that he could not remember.

*   *   *   *   *   *

"We think it was a question for the jury whether Wasserman had actually forgotten or whether he was feigning, falsifying, and willfully trying to help the plaintiffs to recover against him and thus reach a recovery against the insurance company."

■ The ruling there reversed was exactly the opposite of what was done in the present case. The jury here decided the question of fact as to Domingues' co-operation with the defendant against the latter, upon a proper submission, and this Court does not feel it can ignore that verdict, if there was substantial evidence to support it. In the light of what is recited earlier hereinabove to the effect that the insured as a witness finally admitted the left front tire had gone flat, in accordance with his unsworn statement two days after the accident, it was for the jury to decide upon the whole evidence, including that of other witnesses, whether there was a wilful attempt to aid the plaintiffs to the injury of defendant. If the accident happened because of the sudden deflation of a tire, making it impossible to control the car, and without other negligence by Domingues contributing proximately to the collision, then it was unavoidable and there was no liability. On the other hand, if the

jury accepted the testimony of the plaintiffs to the effect that Domingues was driving in the middle of the highway and failed to keep a lookout and to see the obstruction which was plainly in front of him, such negligence would entitle the plaintiffs to recover, provided the speed was not such that a reasonably prudent guest or passenger would have effectively complained. While I would decide this issue of fact against the plaintiffs if it was my province to evaluate the testimony and to determine the credibility of the witnesses, I do not feel that I can for that reason take the case away from the jury whose integrity has not been assailed.

For the same reasons, I cannot say that there has been a clear miscarriage of justice which would require the exercise by me of the discretion of granting a new trial.

The motions will be overruled.